UNITED STATES DISTRCIT COURT
FOR THE DISTRICT OF COLUMBIA

PREKSHA RAHEJA
750 N Dearborn Street, Apartment 2210
Chicago, Illinois 60654

Plaintiff,

vs.

UBER TECHNOLOGIES, INC.
508 Crosby Road
Catonsville, Maryland 21228

Serve: National Registered Agents, Inc.
1015 15th Street, N.W.
Suite 1000
Washington, D.C. 20005

and

MARCEL A. ST. CLAIR
7208 Sybaris Drive
Upper Marlboro, Maryland 20772

Defendants.

Case No. 1:17-cv-01915

**COMPLAINT**

1. Jurisdiction and venue are proper pursuant to 28 U.S. Code §1332, and D.C. Code §13-423(a).

**PARTIES**

2. Plaintiff Preksha Raheja is an adult resident of the State of Illinois, living at the captioned address.

3. Upon information and belief, Defendant Uber Technologies, Inc. ("Uber") is a company authorized to conduct business, and is conducting business, in the District of Columbia.

4. Upon information and belief, Defendant Marcel A. St. Clair ("Defendant St. Clair") is an adult resident of the State of Maryland, living at the captioned address.

## FACTS CONCERNING THE DEFENDANTS' RELATIONSHIP

5. Uber is in the business of providing transportation services for hire.

6. Even though Uber attempts to characterize itself it as a technology company that provides no more than software, this characterization is contrary to fact. In reality, Uber sells rides, not software. It generates revenue for itself based upon the provision of transportation services, and actually generates greater revenue for itself based on the duration of the rides it sells.

7. Uber's status as a business that providers transportation services for hire is further proven by its compliance with D.C. Code §50-301.29a-g, which governs the conduct of private vehicle-for-hire companies and their drivers.

8. Prior to the incident at issue in this case, Uber has consistently marketed itself as a private driver throughout the world. For example, in its Android app, Uber has represented itself to be "your private driver in more than 40 countries." In its iPhone app, it has represented itself to be "your private driver in more than 50 countries."

9. Uber represents to consumers, including consumers in the District of Columbia, that its drivers have been subjected to a thorough system of pre-screenings prior to hiring.

10. Uber further represents to consumers, including consumers in the District of Columbia, that it was monitoring the quality of its drivers on an ongoing basis through its rating system.

11. Prior to the incident at issue in this Complaint, Uber hired Defendant St. Clair as an Uber driver. At all relevant times, Defendant St. Clair was an employee/agent/ servant of Defendant Uber acting within the scope of his employment/agency with Uber.

12. At all relevant times, Uber was involved in all, or almost all, aspects of operations that linked Uber drivers, including Defendant St. Clair, to Uber customers, including Plaintiff. Defendant St. Clair, and other drivers, had very little working freedom or control over the details of this driving service provision.

13. At the time of the incident set forth in this Complaint, Uber dictated the fares that were charged by its drivers, including Defendant St. Clair's fare with Plaintiff, including increased fare rates during "surge" times when demand for Uber driving services created a potential shortage of Uber drivers to accommodate that demand. Uber, not its drivers, held exclusive power whether a "surge" was occurring and how best to handle it.

14. Under its agreement with its drivers, including Defendant St. Clair, Uber maintained exclusive control over customer payment. Pursuant to this agreement, drivers did not collect any form of payment directly from consumers; rather, Defendant St. Clair and other Uber drivers received payment for their work directly from Uber. Uber drivers did not have the authority to adjust a fare upwards or downwards on their own. In order to adjust a fare, the drivers were required to request that Uber to do so at its discretion.

15. At all relevant times, Uber was responsible for the payment of wages to its drivers. Specifically, drivers, including Defendant Sr. Clair, were paid a percentage of the fares collected by Uber, while Uber kept the remaining percentage for itself. Drivers were not allowed to accept payment directly from their passengers.

16. Under its agreement with drivers, including Defendant St. Clair, Uber maintained control concerning the performance of the driver's duties, and drivers were subject to termination as an Uber driver for lack of compliance. The following examples are some, but not all, of the acts of control exerted by Uber over its drivers, including Defendant St. Clair:

a. Uber required drivers to utilize Uber's phone app to arrange customer rides;

b. Uber prohibited its drivers were from arranging customer rides independent of the app (termed by Uber as "anonymous pickups");

c. Uber required its drivers to display the Uber logo on their vehicles;

d. Uber required its drivers to accept ride requests within a timeframe that Uber set and controlled;

e. Uber incentivized and/or required its drivers to minimize the cancellation of trips;

f. Uber required its drivers to maintain a satisfactory ride acceptance rate that Uber set and controlled, or be subject to termination as an Uber driver;

g. Uber used technology to track the journey of its drivers with Uber passengers;

h. Uber required its drivers to maintain their vehicles in an acceptable manner set by Uber;

i. Uber provided its drivers with directions for the route of travel for the customers;

j. Uber instructed its drivers through written manual(s) and otherwise, about its rules governing vehicle maintenance, driver attire, music to be played, customer respect, customer privacy, and customer safety that included such matters as physical contact with customers, abusive language or gestures, flirting with customers, and communication with customers after the trip is over.

k. Uber incentivized its drivers to work longer hours and/or to complete as many rides as possible within set periods of time defined by Uber;

l. Uber sent its drivers new trip requests/assignments before the driver requested a new driving assignment, often times when Uber knew or should have known that the driver was already driving another Uber customer;

m. Uber decided categories of driving services it would allow each Uber driver to provide based upon detailed requisite elements, such as the strength of the driver's background investigation and the make, model, size, condition and age of the driver's cars;

n. Uber directed drivers to areas where Uber could make the most money based upon "where riders needed drivers most" and would increase its fare rates during "surge" times allowing Uber to make more money;

o. Uber required drivers to text the customer prior to arriving at the pick up location; and/or

p. Uber encouraged its drivers to await assignments near areas of increased demand for customer driving assignment.

17. As a means of further controlling the conduct of its drivers, Uber set a minimum average star rating for its drivers, including Defendant St. Clair. Drivers whose average star rating fell below the minimum threshold lost access to their account, i.e. became deactivated as an Uber driver. Drivers whose ratings approached the minimum average rating set by Uber were offered to undergo quality improvement courses conducted by Uber.

18. When needed, Uber provided its drivers with a smartphone as a necessary tool for the performance of Uber's driving service.

19. At all relevant times, Uber informed its drivers and its customer that it would keep its driving service available twenty-four hours a day, seven days a week.

20. At all relevant times, serving as a driver for Uber required no special skills.

## FACTS CONCERNING THIS INCIDENT

21. On June 21, 2016, Plaintiff needed car transportation to drive her from 4000 Wisconsin Avenue, NW, Washington, D.C. to the Washington Marriott at Metro Center located at 775 12th Street NW, Washington, D.C.

22. Plaintiff used her Uber app to order an Uber driver to provide transportation. Uber contacted Defendant St. Clair without Plaintiff's involvement to provide that transportation.

23. Defendant St. Clair arrived at Plaintiff's location, and represented himself as the driver sent by Uber. Based upon that representation, Plaintiff got into the backseat of Defendant St. Clair's car, a 2012 Infiniti sedan entrusting her safety to Defendant St. Clair and to Defendant Uber.

24. While en route to her destination, Defendant St. Clair's vehicle was involved in a crash.

25. The crash occurred at approximately 7:00 pm at the intersection of 12th Street and Independence Avenue SW in Washington, D.C.

26. This crash resulted from Defendant St. Clair attempting to make a left-hand turn from Independence Avenue onto 12th Street against a red light.

27. Defendant St. Clair attempted this left-hand turn directly in front of a 2013 Tesla whose driver had the right-of-way.

28. Plaintiff was injured as a direct and proximate result of the crash.

29. At all relevant times, Defendant St. Clair was performing tasks that were central, not tangential, to Uber's transportation business.

30. At all relevant times, Defendant Uber and Defendant St. Clair were common carriers in the business of transporting passengers, including Plaintiff, within the meaning of D.C. Code §34-203.

**COUNT I:**
**Negligence Claim against Defendant St. Clair**

31. Plaintiff incorporates by reference paragraphs 1 through 30 above as though fully set forth herein.

32. As a driver for a common carrier, and as a common carrier himself, Defendant St. Clair had a duty to use the highest degree of care for the safety of his passengers, in this case, Plaintiff.

33. The duty owed by Defendant St. Clair included, but was not limited to, the use of utmost care, diligence and foresight of a very cautious person in the operation of a motor vehicle, rendering Defendant St. Clair liable for the slightest negligence which human care, skill and foresight could have foreseen or guarded against.

34. Additionally and alternatively, Defendant St. Clair also had a duty to adhere to the applicable motor vehicle safety regulations and requirements applicable to all drivers in the District of Columbia.

35. Defendant St. Clair violated his duties of care to Plaintiff, and was negligent.

36. Defendant St. Clair's negligence included but was not limited to the following acts and/or omissions:

a. failure to obey a red traffic signal that governed his lane of travel in violation of D.C. traffic laws;

b. failure to keep a proper lookout;

c. failure to yield the right-of-way in violation of D.C. traffic laws;

d. failure to pay full time and attention to his driving; and/or

e. impaired alertness as a result of his ongoing use of the Uber app.

37. As a direct and proximate result of Defendant St. Clair's negligence, Plaintiff sustained severe injuries, including but not limited to, the fracture of her C1 vertebra for which she was required to undergo radiology imaging, surgery, rehabilitation and other medical treatment for her condition.

38. As a further direct and proximate result of Defendant St. Clair's negligence, Plaintiff incurred and will continue to incur medical expenses to treat her injury and condition; and has suffered and is likely to continue to suffer lost wages and loss of earning capacity.

39. As a further direct and proximate result of Defendant St. Clair's negligence, Plaintiff suffered permanent injury, disfigurement, deformity, pain, mental anguish, humiliation, and indignity.

**Count II:**
**Negligence Claim against Defendant Uber**

40. Plaintiff incorporates by reference paragraphs 1 through 39 above as though fully set forth herein.

41. As a common carrier and/or employer of a common carrier, Defendant Uber had a non-delegable duty to use the highest degree of care for the safety of its passengers, in this case Plaintiff.

42. The duty owed by Defendant Uber included, but was not limited to, the use of utmost care, diligence and foresight in the investigation, hiring, training, monitoring and/or influencing the performance of its drivers, including Defendant St. Clair.

43. Defendant Uber violated these duties of care to Plaintiff, and was negligent.

44. Additionally and alternatively, as a common carrier, Defendant Uber is responsible for negligent acts and/or omissions of Defendant St. Clair, as outlined in Count I above.

45. As a direct and proximate result of Defendant St. Clair's negligence, Plaintiff sustained severe injuries, including but not limited to, the fracture of her C1 vertebra for which she was required to undergo radiology imaging, surgery, rehabilitation and other medical treatment for her condition.

46. As a further direct and proximate result of Defendant St. Clair's negligence, Plaintiff incurred and will continue to incur medical expenses to treat her injury and condition; and has suffered and is likely to continue to suffer lost wages and loss of earning capacity.

47. As a further direct and proximate result of Defendant St. Clair's negligence, Plaintiff suffered permanent injury, disfigurement, deformity, pain, mental anguish, humiliation, and indignity.

**Count III**
**Respondeat Superior Claim against Defendant Uber**

48. Plaintiff incorporates by reference paragraphs 1 through 47 above as though fully set forth herein.

49. At all times relevant to this case, Defendant Uber was the principal, employer and/or master of Defendant St. Clair.

50. Defendant's role as the principal, employer and/or master of Defendant St. Clair is demonstrated, in part, in the following ways:

a. Defendant Uber controlled the selection of who was eligible to drive for Uber through its background check, its monitoring system and rating system;

b. Defendant Uber engaged Defendant St. Clair to be the driver for Plaintiff on June 21, 2016;

c. Defendant Uber controlled the payment of wages to Defendant St. Clair as outlined above, including but not limited to the allegations in paragraphs 13, 14, & 15.

d. Defendant Uber maintained the power to terminate and/or suspend Defendant St. Clair as one of its drivers, which was established and demonstrated in numerous ways including but not limited to compliance with D.C. Code §50-301.29a;

e. Defendant Uber controlled Defendant St. Clair's conduct as outlined above, including but not limited to the allegations in paragraphs 16, 17 & 22.

f. Defendant St. Clair's service as an Uber driver was a part of the regular business of Uber as demonstrated in part by the revenues earned by Defendant Uber from customer fares.

51. At all times relevant to this case, Defendant St. Clair was acting within the scope of his employment, agency and/or duties with Defendant Uber.

52. As the principal, employer, and/or master of Defendant St. Clair, Defendant Uber owed a duty to Plaintiff through Defendant St. Clair to adhere to the applicable motor vehicle safety regulations and requirements applicable to all drivers in the District of Columbia.

53. Defendant Uber was negligent in its the performance of its duties for the reasons set forth in Count I above.

54. As a direct and proximate result of Defendant St. Clair's negligence, Plaintiff sustained severe injuries, including but not limited to, the fracture of her C1 vertebra for which she was required to undergo radiology imaging, surgery, rehabilitation and other medical treatment for her condition.

55. As a further direct and proximate result of Defendant St. Clair's negligence, Plaintiff incurred and will continue to incur medical expenses to treat her injury and condition; and has suffered and is likely to continue to suffer lost wages and loss of earning capacity.

56. As a further direct and proximate result of Defendant St. Clair's negligence, Plaintiff suffered permanent injury, disfigurement, deformity, pain, mental anguish, humiliation, and indignity.

**Count IV**
**Apparent Agency Claim against Defendant Uber**

57. Plaintiff incorporates by reference paragraphs 1 through 47 above as though fully set forth herein.

58. Plaintiff relied upon Defendant Uber to locate and select a driver for her on June 21, 2016.

59. Without input from Plaintiff, Defendant Uber contacted Defendant St. Clair to be the driver for Plaintiff.

60. Plaintiff's placement as a passenger in the vehicle driven by Defendant St. Clair occurred solely as a result of the prior existing relationship between Defendant Uber and Defendant St. Clair, which included purportedly included background check(s) of Defendant St. Clair.

61. Plaintiff did not select, affirmatively or otherwise, Defendant St. Clair as her driver on June 21, 2016.

62. Plaintiff relied upon the prior existing relationship between Defendant Uber and Defendant St. Clair as a primary basis for getting into Defendant St. Clair's vehicle as a passenger on June 21, 2016 and for entrusting him with her safety.

63. Plaintiff also relied upon Defendant St. Clair's identification of himself as her Uber driver, and the app's confirmation that Defendant St. Clair was the Uber driver assigned to her.

64. Defendant Uber owed a duty to Plaintiff through its ostensible agents to adhere to the applicable motor vehicle safety regulations and requirements applicable to all drivers in the District of Columbia.

65. Defendant Uber was negligent in its the performance of its duties for the reasons set forth in Count I above.

66. As a direct and proximate result of Defendant St. Clair's negligence, Plaintiff sustained severe injuries, including but not limited to, the fracture of her C1 vertebra for which she was required to undergo radiology imaging, surgery, rehabilitation and other medical treatment for her condition.

67. As a further direct and proximate result of Defendant St. Clair's negligence, Plaintiff incurred and will continue to incur medical expenses to treat her injury and condition; and has suffered and is likely to continue to suffer lost wages and loss of earning capacity.

68. As a further direct and proximate result of Defendant St. Clair's negligence, Plaintiff suffered permanent injury, disfigurement, deformity, pain, mental anguish, humiliation, and indignity.

WHERFORE, Plaintiff Preksha Raheja demands judgment against Defendant Uber Technologies, Inc. and Defendant Marcel A. St. Clair, jointly and severally, in the form of compensatory damages in the full and just amount of Three Million Dollars ($3,000,000.00), plus interest and costs.

**JURY TRIAL DEMAND**

Plaintiff requests a jury trial on all of the above claims.

Respectfully submitted,

SHEVLIN SMITH, P.C.

By: ____________________________

Lisa D. Barnett, # 480535
lbarnett@shevlinsmith.com
Michael Shevlin # 447064
mshevlin@shevlinsmith.com
3975 University Drive, Suite 405
Fairfax, Virginia 22030
(703) 591-0067 – Telephone
(703) 591-1877 – Facsimile
*Counsel for Plaintiff*